UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

NELSON TROGLIN,          )
                               )
          Petitioner,       )
                               )
v.                          )          No. 1:12-cv-41
                               )          *Collier/Carter*
BRUCE WESTBROOKS,     )
                               )
          Respondent.     )

## MEMORANDUM OPINION

Acting *pro se*, Nelson Troglin ("Troglin" or "Petitioner"), an inmate confined in the Bledsoe County Correctional Complex, brings this petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging the legality of his confinement under a 2000 Bledsoe County, Tennessee judgment (Court File No. 1). A jury convicted Troglin of second degree murder, and, for this offense, he is serving a prison sentence of twenty-three years. Warden Bruce Westbooks has filed an answer to the petition, which is supported by copies of the state court record (Court File Nos. 8 and 9, Addenda 1-4). Petitioner has replied to the Warden's answer (Court File No. 15), and thus the case is ripe for disposition.

## I.    PROCEDURAL HISTORY

Petitioner's judgment was affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA") and no further direct review was sought. *State v. Trolin*, No. E2000-00251-CCA-R3-CD, 2002 WL 385800 (Tenn. Crim. App. Mar. 12, 2001). Troglin next applied for state post-conviction relief, but the trial court denied his petition. Troglin appealed the post-conviction court's decision, but likewise was unsuccessful in obtaining relief in either the TCCA

or the Tennessee Supreme Court. *Troglin v. State*, No. E2010-01041-CCA-MR3-PC, 2011 WL

2982640 (Tenn. Crim. App. July 22, 2011), *perm. to app. denied* (Tenn. 2011). There followed

this timely habeas corpus application.


## II.    BACKGROUND

The factual recitation is taken from the TCCA's opinion on appeal of petitioner's post-

conviction case.

> On June 15, 1998, Richard Stafford found the victim's lifeless
> body in the victim's bedroom sometime after 6:30 p.m. The victim
> had been shot four times with a 9mm rifle. The murder weapon
> was never found. One of the bullets remained in the victim's body,
> while the other three bullets exited the body and were found in
> various places in the victim's bedroom. Four expended 9mm
> Winchester Luger hulls were found in the victim's bedroom.
> Officers found more than $400 in the victim's left front pocket.
> The victim's right front pocket was empty and "had been pulled out
> exposing the pocket area." In the investigation of the victim's
> death, the Petitioner was developed as a potential suspect.
>
> On Saturday, June 13, the Petitioner was at Mr. Holland's game
> room with the victim, Richard Wooden, and Dennis Johnson. The
> Petitioner asked Mr. Wooden to step into the hallway, where the
> Petitioner asked Mr. Wooden for a gun and told him that he
> wanted to steal the victim's money. Mr. Wooden told the Petitioner
> that he should just ask the victim for the money because the victim
> would likely give him the money. After that conversation, the
> Petitioner called Mr. Wooden into the hallway two more times and
> asked him if he could use his gun. Mr. Wooden refused. The
> Petitioner suggested that Mr. Wooden could just offer to take the
> victim home in order to allow the Petitioner to stop the car and
> steal the victim's money. In furtherance of this plan, the Petitioner
> offered Mr. Wooden half of the victim's money. Mr. Wooden again
> refused. The Petitioner told Mr. Wooden that he was going to kill
> the victim and take his money.
>
> The Petitioner purchased a 9mm semiautomatic Marlin from
> Norman Blaylock on Sunday, June 14. Mr. Blaylock gave the
> Petitioner ammunition, and the Petitioner test-fired the weapon,
> leaving six expended hulls on the Blaylock property. The

Petitioner attempted to sell the 9mm weapon to Bob and Helen Smith later that day. While on their property, he shot the weapon into the air, leaving two expended hulls on the Smith property. Agent Steve Scott of the Tennessee Bureau of Investigation (TBI) examined the four hulls found at the victim's residence, the six hulls found at the Blaylock residence, and the two hulls found at the Smith residence. He determined that all 12 of the hulls had been fired from the same 9mm weapon.

At trial, Roger Hodge testified that the Petitioner came into his store, Nyla's Place, on Monday, June 15 and purchased a box of 9mm Winchester ammunition for $20. Nyla Hodge confirmed that the Petitioner came to their store that day and said that the Petitioner was there for approximately 15 minutes between 5:00 and 5:30 p.m. Bob Swafford said that he was at Nyla's Place on June 15 at approximately 5:00 p.m. when the Petitioner was talking to Roger Hodge about ammunition.

Billy Frank Wheeler testified that he last saw the victim at the post office at approximately 4:30 p.m. on Monday, June 15. Nannie Lou Troglin, the victim's half-sister, testified that on that day, the victim had visited her and showed her that he had a large sum of money. Ms. Troglin stated that she saw the Petitioner's car at the victim's house later that afternoon. Mike Stafford and Virginia Wright, who lived down the street from the victim, testified that they saw the Petitioner's car at the victim's house after 5:00 p.m. Ron Sullivan and Christy Luttrell testified that they, along with Richard Stafford, were at the Stafford residence on that day and that as they were leaving to take a car to get the tire fixed, they saw the Petitioner's car at the victim's house after 5:00 p.m. They also testified that they saw the Petitioner's car at the victim's residence on their return trip to the Stafford home.

Richard Stafford said that he went with Ron Sullivan and Christy Luttrell to get Ron Sullivan's tire fixed. He said that he saw the Petitioner's car at the victim's residence on their way out and on the return trip. He said that once they returned, he walked to the victim's residence with Senora Joyner sometime after 6:30 p.m. He said that the Petitioner's car was no longer there and that he and Senora Joyner were at the residence for a little while before he discovered the victim's body in the bedroom.

Ted Fugate testified that he bought a truck from the victim for $1,500 on Saturday, June 13. He said that the week before the victim died, the Petitioner lost approximately $1,500 in a game at Mr. Holland's game room. He said that on Monday, June 15, he was at Mr. Holland's game room when the Petitioner arrived. After

everyone had just heard about the victim's death, the Petitioner laid some money on the table and said he wanted to contribute the money for flowers. Richard Wooden testified that when the Petitioner laid the money down, the Petitioner said, "There's the s-n of a b——h some flowers."

*Troglin*, 2011 WL 2982640, at *1-2.

On these facts, petitioner was charged with first degree murder, but the jury convicted him of the lesser-included offense of second degree murder.

## III.    STANDARD OF REVIEW

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. §§ 2241, *et seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

4

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard ... 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.  DISCUSSION

The § 2254 petition for habeas corpus raises three main grounds for relief: (1) insufficient evidence, (2) several instances of ineffective assistance of counsel; and (3) denial of a fair trial and due process of law.  The Warden argues, in his answer, that Troglin is not entitled to relief with regard to the state court decisions rejecting his claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. With respect to other claims, the Warden suggests either they were waived in state court and are now procedurally barred from habeas corpus review or are not cognizable federal claims in the first place.

Petitioner takes a contrary position, maintaining, in his reply to the Warden's answer, deference is unwarranted since the state court decisions on his claims fail one or more of the tests in § 2254(d); Tennessee's "waiver" statute is ambiguous and the state court's finding of waiver violates his due process rights; and errors in state post-conviction proceedings which rise to the level of due process violations are cognizable habeas corpus claims.

The Court agrees with respondent Warden concerning the suitability of habeas corpus relief and, for the reasons which follow, will **DENY t**he petition and **DISMISS** this case. Troglin's grounds will be discussed in the order in which they were presented.

## A.    Insufficient Evidence (Pet., Ground One)

Petitioner points to gaps in the evidence, which, he insists, show the proof is not sufficient to sustain his conviction of second degree murder.  Troglin first maintains there was no conclusive proof, including physical evidence, demonstrating he possessed or fired a 9mm rifle.  Next, petitioner contends testimony of witnesses who stated they observed his car at the scene of the crime did not prove he committed the offense.  Likewise, Troglin's personal enemy, who was also a convicted felon, gave suspect and inconclusive testimony, in which he stated petitioner desired to rob the victim.

### 1.   The Law

The controlling rule for resolving a claim of insufficient evidence was established in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See Gall v. Parker*, 231 F.3rd 265, 287-88 (6th Cir. 2000) (*Jackson* is the governing precedent for claims of insufficient evidence.).  There, the Supreme Court held evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id*. at 319.  Circumstantial evidence which convinces a rational jury of each element of the offense beyond a reasonable doubt is sufficient to sustain a conviction.  *Ibid*.  The evidence, however, need not be such as to exclude every reasonable hypothesis other than that of guilt.  *Id*. at 317 n. 9.

Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts lies within the domain of the trier of fact.  *Id*.at 319.  A habeas court reviewing an insufficient-evidence claim must apply two levels of deference.  *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).  Under *Jackson,* deference is owed to the factfinder's verdict,

"with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. Ergo, petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### 2. Analysis

The TCCA began its discussion of petitioner's claim by summarizing the evidence which sustained his conviction. There was proof the victim was killed with a 9mm firearm. Though Troglin denied ever owning a 9mm weapon or buying ammunition for such a weapon, three witnesses offered testimony which contradicted Toglin's statement. There was also evidence showing the Winchester 9mm cartridges found in the room with the victim's body were shot from the 9mm firearm petitioner possessed, which were similar to the type of cartridges petitioner bought earlier that day and the size of bullets which killed the victim.

Further, petitioner provided to law enforcement officials an accounting of his day's activities, but testimony of various witnesses contradicted his accounting. Missing from Troglin's account was any mention of a visit to the victim's residence, despite six witnesses testifying to seeing Troglin's vehicle parked at the victim's residence. The proof also included evidence contrary to the testimony of the six witnesses, in the form of testimony by four members of petitioner's family (two nieces, a nephew, and a sister), who stated petitioner was asleep on his sister's sofa during the approximate period his car was reported to have been seen at the victim's residence.

Among other evidence adduced, through the testimony of a witness, was that petitioner had expressed a desire, two days prior to the victim's actual killing (and, most likely, robbery), to

rob and kill the victim. Finally, the proof showed the killer aimed a weapon and fired four bullets into the victim's body. This conduct, according to the TCCA, was reasonably certain to kill the victim and fell within the definition of "knowing" conduct.

The TCCA then defined the offense of second degree murder as the unlawful, knowing killing of a victim. *Troglin*, 2002 WL 385800, at *8 (citing to Tenn. Code Ann. § 39-13-210(a)(1) (1997)). The state court explained a person acts knowingly "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* (citing to Tenn. Code Ann. § 39-11-302(b)).

The TCCA recognized, where the sufficiency of the evidence is challenged, the relevant question is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found all the essential elements of the offense beyond a reasonable doubt, and it cited to *Jackson* as the source of this standard. Therefore, the decision of the TCCA was not contrary to the controlling legal rule in Supreme Court cases. *See Gall*, 231 F.3rd at 287-88.

Concluding the evidence detailed above, viewed in the light most favorable to the State, was sufficient to sustain Troglin's conviction for second degree murder, the TCCA declined to give any relief.

In his response, Troglin maintains the circumstantial evidence was not consistent with his guilt of second degree murder and suggests alternative inferences to be drawn from the evidence other than the ones which the jury drew. Whether to credit testimony offered by witnesses, including petitioner's enemy, petitioner's associates, and petitioner's family members; whether to be persuaded the vehicle observed at the scene belonged to Troglin or to someone who was buying alcoholic beverages from the victim, an alleged bootlegger; and whether to accept that the cartridges and bullets tied to the killing came from the 9mm firearm in Troglin's possession

or even to accredit evidence showing he possessed such a weapon—all are issues to be determined by the fact finder, in this case petitioner's jury, and not by this federal habeas court. *Jackson*, 443 U.S. at 319.

Also in his response, Troglin argues the circumstantial evidence did not exclude "every other reasonable theory or hypotheses except that of guilt" and, thus, was constitutionally deficient. However, whether the circumstantial proof in his case was of this caliber is not a matter for a review under the *Jackson* standard. All circumstantial evidence must do to hold up to constitutional scrutiny is to convince a rational jury of each element of the offense beyond a reasonable doubt. *Id.*

This Court finds the state court reasonably determined the evidence in petitioner's case did so and now declines to issue the writ because he has failed to demonstrate the state court's application of *Jackson* to the facts of his case was unreasonable or that its decision was based on an unreasonable factual determination.

## B. Ineffective Assistance of Counsel, (Pet., Ground Two)

Petitioner asserts he received ineffective assistance from his attorney at trial in four instances. Among those cited shortcomings on the part of counsel are his failures: (1) to investigate, interview and prepare witnesses, the most important of whom was Bobby Holland; (2) to obtain a ballistics expert to testify at trial; (3) to object to jury instructions; and (4) to object to trial court's error in failing to admonish the jury, as required by state procedural rules.

### 1. The Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably

effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In

*Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second, the
> defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both showings, it
> cannot be said that the conviction . . . resulted from a break down
> in the adversary process that renders the result unreliable.

*Id.* As with any other claim under § 2255, the burden of proving ineffective assistance of

counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466

U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the

acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's

performance must be made "from counsel's perspective at the time of the alleged error and light

of all the circumstances, and the standard of review is highly deferential." *Kimmelman v.

Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was

within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." *Moss v. United

States,* 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 454-55 (quoting *Strickland,* 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id*. (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 2. Analysis

When these claims of ineffective assistance were carried to the TCCA, the state appellate court cited to *Strickland* and employed its two-pronged test in reviewing petitioner's claims of ineffective assistance. Thus, its conclusion relative to those claims is not contrary to the well-established legal rule in Supreme Court cases governing these types of claims. The question then becomes whether the state court's application of *Strickland* to the facts of petitioner's case was unreasonable.

Each of counsel's alleged failings will be addressed individually.

#### a. Failure to investigate, interview and prepare witnesses

As his first example of ineffective assistance, petitioner points to counsel's failure to call four witnesses to the stand, but the supporting facts offered in his petition are addressed only to the failure to call Bobby Holland as a witness. In Troglin's reply, however, he makes arguments with respect to all four witnesses and to two others and, thus, the state court's rulings on each of those witnesses will be examined (Court File No. 15-1, Petr's Reply).

##### i. Bobby Holland

Petitioner asserts he told counsel that Bobby Holland would testify at trial that they had gone together to the residence of Bob and Helen Smith, where, contrary to the Smiths' testimony, petitioner did not handle or fire a weapon, much less a 9mm rifle—the firearm purportedly used in the killing. Yet, despite having this information conveyed to him by Troglin, counsel failed to investigate, interview, or call Holland to testify.

At the post-conviction hearing, counsel testified he had interviewed "everybody and anybody [he] could," including witnesses whom Troglin identified as alibi witnesses, and even obtained affidavits from some of those individuals, but did not find Holland's name in his file, though counsel stated he would have written it down in his file had petitioner given the name to him (Court File No. 9, Addendum 3, vol. 3, Post-Conviction H'rg. Tr. at 193 and 202). Holland also testified at the hearing, stating he and petitioner had gone to the Smith residence on a date prior to the murder, though he could not recall the exact date, and that, while they were there, petitioner did not handle or fire a weapon, (*Id*. at 262-63).

When this claim was presented in the post-conviction appeal, the TCCA found Troglin would not have benefited from this testimony, reasoning that the Smiths did not testify Holland had been present on the day petitioner shot the firearm on their property, and, as Holland acknowledged, petitioner could have visited the Smith home on another occasion or shot the firearm while Holland was elsewhere on the property. It further reasoned that even if Holland had testified at trial and had the Smith's testimony been impeached, several other witnesses gave testimony tying Troglin to the 9mm rifle. The TCCA found petitioner had failed to show ineffective assistance and it denied relief.

Counsel's failure to investigate and call a witness who can provide testimony favorable to the defense can be ineffective assistance, if the offering of such testimony results in a reasonable

probability of an acquittal. *See, e.g., Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005). But "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citation omitted). Nor must an attorney "interview every possible witness to have performed proficiently." *Riley v. Payne*, 352 F.3d 1313, 1318 (9th Cir. 2003). Complaints about uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy. *Coble v Dretke*, 444 F.3d. 345, 350 (5th Cir. 2006).

The transcript of the evidentiary hearing shows Holland could not pinpoint the date he and petitioner went to the Smith residence, but could only recall the event happened prior to the victim's murder. Testimony which did not establish the date the described visit to the Smith's home occurred was on June 14, 1998—the date petitioner shot the firearm into the air on the Smith's property and the date to which they testified he fired the weapon—would not have contradicted the couple's testimony, and would not have provided the jury with information useful in helping it to determine Troglin's guilt or innocence.

Defense counsel's failure to investigate, interview, or call a witness whose testimony is not beneficial cannot result in prejudice. *Strickland*, 466 U.S. at 692 ("[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution"). This is so because there is no reasonable probability of a different outcome where counsel fails to present testimony which is not favorable to his client. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) ("The likelihood of a different result must be 'substantial,' not just 'conceivable.'") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 791 (2011)).

The Court finds relief unwarranted here because the TCCA's rejection of petitioner's claim of ineffective assistance was not an unreasonable application of S*trickland* and because the state court did not unreasonably determine the facts placed before it.

### ii. Lloyd Myers,[1] Sonora Joiner, Henry Sapp, & Wilburn Smith

In his reply, Troglin maintains Lloyd Myers would have testified he [petitioner] was not a violent man. Sonora Joiner would have testified she did not see petitioner all day on June 18, 2012 (Court File No. 15-1, Petr's Reply at 16),[2] and her testimony would have raised a reasonable doubt as to Troglin's guilt. Henry Sapp (called "Jabber" Sapp by petitioner), and Wilburn Smith could have been character witnesses and their testimony would have shown to the jury that even the Sheriff of Bledsoe County (Wilburn Smith) did not think Troglin had committed the crime.

The TCCA, in addressing this issue found the record supported that the testimony by Myers, Joiner, and Sapp "would not have contributed to the Petitioner's defense." *Troglin*, 2011 WL 2982640, at *11. Had counsel called Meyers to testify concerning Troglin's nonviolent nature, it would have permitted the prosecution to tell the jury about petitioner's role in Mike Stafford's alleged shooting. Joiner simply testified at the evidentiary hearing that she did not see Troglin when the victim's body was discovered at his house, but her testimony did not rule out the possibility he was there when she was not there. Sapp did not support Troglin's allegation that

---

[1] This spelling of this proposed witness's name varies in different parts of the record. In the state post-conviction petition, Troglin spelled it as "Lloyd Mars" (Court File No. 9, Addendum 3, vol. 1 at 7), but the court reporter spelled it as "Loyd Myers" in the transcript of the post-conviction hearing (*Id.*, vol. 3, Post-Conviction Hr'g Tr. at 198), whereas the TCCA spelled it as "Lord Meyers" in its opinion. The Court will refer to this individual as Lloyd Myers, for the sake of consistency and in keeping with the reply Troglin submitted to this Court (Court File No. 15-1, Petr's Reply at 16). It should be noted that references to page numbers of documents Troglin has filed in this Court will correspond to the pagination scheme established in the Court's CM/ECF filing system.

[2] The Court understands this date to be a drafting mistake on petitioner's part since the murder occurred on June 15, 1998, and since it was on this date Joiner and another individual discovered the victim's body. There is no issue as to where petitioner was seen on June 18, 2012, because, on that date, he was in the custody of state authorities serving a prison sentence.

14

Sapp had stated he had heard Bob Swafford would testify petitioner did not kill the victim. Furthermore, while Bob Swafford actually testified at trial, as the TCCA pointed out, he said nothing about his belief in petitioner's guilt or innocence.

Although Troglin asserts the state court's adjudication of this claim was an unreasonable application of *Strickland* and was based on an unreasonable determination of the facts, he has not offered any developed argument to support his assertions.

As stated, counsel does not render ineffective assistance by failing to investigate or call witnesses whose testimony will not be helpful to the defense. The failure to call such witnesses does not result in prejudice because there is no reasonable probability of a different result, had counsel called witnesses who could not have bolstered the defense.

There remains petitioner's assertion that Henry Sapp and Wilburn Smith could have testified the county Sheriff told them petitioner did not kill the victim and he [the Sheriff] knew who did. The transcript of the evidentiary hearing shows Sapp testified at the post-conviction hearing and denied having any conversations with the Sheriff concerning the murder of the victim (Court File No. 9, Addendum 3, vol. 3, Post-Conviction Hr'g Tr. at 182). Therefore, Sapp's testimony at the hearing revealed that calling him as a witness at trial would not have advantaged petitioner.

Likewise, counsel testified at the evidentiary hearing he had subpoenaed Wilburn Smith, not because Smith may have overheard a comment by the Sheriff as to whether petitioner was the shooter, but as a character witness. Counsel stated he decided not to call Smith as a witness because his intended testimony as to Troglin's truthfulness and honesty would not have been admitted and was unnecessary since Troglin did not testify. As observed earlier, the TCCA

pointed out that the Sheriff testified at trial but mentioned nothing concerning his belief as to petitioner's guilt or innocence.

While the TCCA made no explicit finding specific to the claim involving Wilburn Smith, perhaps because of the manner in which the claim was offered to the state court ( i.e., without any developed argument showing how counsel's alleged error with respect to this witness amounted to ineffective assistance (Addendum 4, Doc. 1, Petr's Br. at 18), it did deny relief with respect to counsel's alleged failings to investigate and call witnesses to testify. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter* , 562 U.S. 86, __, 131 S. Ct. 770, 784 (2011).

A reviewing court must presume counsel's challenged conduct could be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Strategic decisions are especially onerous for a petitioner to attack. *Id*. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."). There is no right to call witnesses where the testimony would be irrelevant, repetitious, cumulative, or unnecessary. *Piggie v. Cotton*, 344 F.3d 675, 677 (7th Cir. 2003). Additionally, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard." *Harrington*, 562 U.S. at __, 131 S. Ct. at 788

Given the "doubly deferential" review of a *Strickland* claim under § 2254(d)(1), *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009), as well as the difficulty

encountered by a petitioner in challenging counsel's tactical decisions, the Court finds the TCCA court reasonably could have concluded counsel's decision not to call Wilburn Smith to the stand, though he was under a subpoena to appear, was present at the trial, and was prepared to testify, was a strategic decision, which was made after a thorough investigation of the facts, and, thus, did not constitute ineffective assistance. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc) (observing "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess").

In sum, habeas corpus relief does not lie with respect to the first category of claim involving counsel's claimed failure to investigate and call witnesses to testify.

### b. Failure to obtain a ballistics expert witness

Troglin asserts counsel gave him ineffective assistance by failing to obtain a ballistics expert to refute the testimony of the state's expert, which connected him to the murder weapon. He maintains that, prior to trial, counsel determined it would be necessary to secure the services of such an expert. To this end, counsel filed a motion to continue, arguing a ballistics expert would be necessary to counter the testimony of the state's expert witness, who would state the bullets and cartridges removed at the crime scene matched those found at the Smith residence, where Troglin allegedly fired a 9mm rifle. Even so, and despite petitioner's request that counsel hire the expert and his [petitioner's] offer to obtain funds from his family to pay the proposed expert's fee, counsel did not obtain a ballistics expert for the defense.

At the evidentiary hearing, counsel testified he made a concerted effort to distance Troglin from the 9mm firearm. However, one thing he failed to do to accomplish this goal, according to Troglin, was to obtain a ballistics expert—an error which, by petitioner's lights, amounts to ineffective assistance.

When presented with this claim during Troglin's post-conviction appeal, the TCCA stated:

> Relative to the decision to hire a ballistics expert, trial counsel testified that hiring an expert was not necessary given their theory of defense. Our review of the Petitioner's case reveals that trial counsel pursued an alibi defense. We agree that distancing the Petitioner from any 9mm weapons was an important issue at trial. Testimony from a ballistics expert contending that analysts could not prove that the same weapon was fired at the three locations or that the same weapon was not fired at the three locations would have weakened the State's theory of the case, thereby strengthening the Petitioner's defense. However, this court has long held that [w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. We cannot speculate as to what a ballistics expert might have said at trial. Accordingly, we conclude that the Petitioner has failed to establish that trial counsel was deficient for failing to hire a ballistics expert.

*Troglin*, 2011 WL 2982640, at *10.

As noted, the TCCA determined petitioner had failed to present testimony from a ballistics expert and, by virtue of this failing, no evidence of any ineffective assistance was before the state court. *See United States v. Ashi*mi, 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted).

Given petitioner's failure to offer testimony at the post-conviction hearing to demonstrate prejudice flowed from the absence of expert testimony at trial, the state court did not unreasonably apply *Strickland* when it rejected this claim. *See Martin v. Mitchell*, 280 F.3d 594,

608 (6th Cir. 2002) (ruling that petitioner did not show ineffective assistance where he failed to establish "how the retention of experts . . . would have been beneficial to his defense").

This conclusion is unaffected by Troglin's insistence he could not present testimony by a ballistics expert because the post-conviction court denied his motion for funds to hire such an expert. Deficiencies in state post-conviction proceedings are not cognizable matters on federal habeas review. *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1989).

### c. Failure to object to jury instruction

In this third category of alleged attorney errors, Troglin maintains he received ineffective assistance when counsel did not object to the trial court's instructions to the jury during deliberation, advising it that, if it did not reach a verdict, it would be sequestered over the Fourth of July holiday weekend.

When presented with this claim in Troglin's post-conviction appeal, the TCCA pointed to trial counsel's testimony, in which he stated he was unaware Mel Matthews (a bailiff in the courthouse who, according to petitioner's allegations, conveyed the trial court's instruction regarding the Fourth of July holiday to the jury) "may have said anything about the holiday to the jury." According to counsel's testimony, he became concerned about the issue, raised it in his motion for new trial, and obtained an affidavit from Matthews.[3] In his affidavit, Matthews made averments, which alleviated counsel's concern as to whether the jury was rushed to reach a decision because of the holiday. Based on this testimony and finding Troglin had failed to prove a deficiency on counsel's part, the TCCA rejected this claim of ineffective assistance.

---

[3] At the evidentiary hearing, Matthews testified he was in charge of the jury and when he asked the jurors, upon the trial court's directive, whether they wanted to continue to deliberate or break for supper, they said they wanted to continue deliberating. *Troglin*, 2011 WL 2982640, at *3. He also stated he did not tell the jury what would happen if they failed to reach a verdict before day's end.

To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, a petitioner must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88.

Here, counsel performed a reasonable and thorough investigation of the issue of whether the jury was pressured to return a verdict to avoid sequestration over the Fourth of July holiday, determined he could not substantiate a claim based on the alleged instruction, and decided not to pursue the issue further. Petitioner does not suggest anything counsel left undone in his investigation into this alleged incident, nor does the record suggest anything more which counsel could have done.

The Court finds the state court reasonably applied *Strickland* in determining counsel did not render a deficient performance in this respect. Suffice it to say, no prejudice accrues from counsel's failure to advance a claim which cannot be sustained. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless issues on appeal); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (no duty to raise baseless and frivolous issues).

### d. Failure to object when trial court omitted an admonishment to the jury

According to Troglin, the trial court failed to admonish the jury on the first day of trial without an objection to this omission by counsel, though this instruction was required by Tenn. R. Civ. P. 24(4) and Tenn. R. Crim. P. 24(g). Absent an admonishment to the jury telling it not to communicate with other jurors or anyone else regarding any subject connected to the trial, to report promptly to the court any incident involving an attempt by any person to influence any member of the jury, and most important, not to read, listen to, or review any news reports involving the case, the jury did not know to refrain from doing these things.

20

When this issue was advanced in Troglin's post-conviction appeal, the TCCA noted the record was not clear as to whether the trial court had given or had not given the instruction. It then found no showing of prejudice due to the trial court's alleged omission, given petitioner's failure to allege the jurors gathered outside information due to the trial court's failure to admonish them. The TCCA observed the trial court gave the admonishment towards the end of trial, upon counsel's request, and ultimately concluded petitioner had not established either a deficient performance or prejudice.

Petitioner points to no constitutional right to have a jury given the admonishment which allegedly was omitted on the first day of trial. *Meggs v. Fair*, 621 F.2d 460, 463 (1st Cir. 1980) ("[C]ourts are in general agreement that there is no constitutional requirement that a judge admonish a jury that its members should not discuss a case until final submission . . ." (listing cases); *United States v. Viale*, 312 F.2d 595, 602 (2d Cir. 1963) ("It has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded.").

Even so, the Constitution protects a criminal accused's right to a fair trial, which is effectuated, under the Sixth Amendment, by impaneling a jury of impartial, "indifferent" jurors who render a verdict based on evidence adduced at the trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Admonishing a jury "to refrain from prematurely discussing the case with fellow jurors in a criminal case helps protect a defendant's Sixth Amendment right to a fair trial." *United States v. Resko*, 3 F.3d 684, 689-90 (3d Cir. 1993). A juror's discussion of a case before the start of formal deliberations threatens a jury's impartiality. *United States v. Yonn*, 702 F.2d 1341, 1345 n. 1 (11th Cir.1983).

In Troglin's case, as the TCCA pointed out, he did not allege the jury engaged in any untoward conduct, such as gathering outside information, as a result of trial court's alleged failure to admonish them not to engage in such conduct. Absent a contention of some sort of juror misconduct as a result of the trial court's failure to issue the instruction, petitioner did not show a deficient performance or prejudice with respect to counsel's failure to object to the trial court's alleged error, *see United States v. Weatherd*, 699 F.2d 959, 962 (8th Cir.1983) ("The district court did not commit reversible error by failing to admonish the jury on this one occasion."), and the state court did not unreasonably apply *Strickland* in reaching this conclusion.

**C. Denial of a Fair Trial and Due Process of Law, (Pet., Ground Three) - Claims Based on Trial Proceedings.**

In his first due process claim, Troglin asserts the trial court failed to sentence him in open court and that he found out about the imposition of his 23-year punishment only after the sentencing hearing. In the next claim, petitioner asserts the trial court failed to admonish the jury the first day of trial. (This issue was discussed previously as an attorney error.) His third claim in this category is the trial court told the jury to reach a verdict or be sequestered. (Likewise, this issue was raised earlier as an instance of infective assistance of counsel.) These three claims are addressed together for the purposes of succinctness.

Petitioner presented these claims to the TCCA, which found them to have been waived by his failure to present them on direct appeal. Respondent Warden asserts the finding of waiver amounts to a procedural default, which bars federal habeas review, unless Troglin shows cause and prejudice to overcome his default.

**1. The Law**

When a state invokes a procedural default defense, a court in the Sixth Circuit must apply a four-factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether the rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008) (applying *Maupin*).

### 2.   Analysis

Tennessee has a procedural rule of waiver, *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002), and the rule was applied in Troglin's case. The rule is an adequate and independent state ground sufficient to foreclose habeas review. *Id*. at 738.

As noted, federal review of a procedurally defaulted claim is precluded, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

23

Troglin does not actually allege cause or prejudice, but instead faults the TCCA for ruling as it did. Petitioner claims the TCCA was wrong to find waiver because he raised the issues in his petition for post-conviction relief, a proper state court vehicle for seeking a remedy for violations of constitutional rights, and it likewise was wrong not to consider his claims regarding the abridgment of his constitutional rights, as they too were presented in the post-conviction petition. Troglin also challenges the post-conviction statute as being ambiguous and the TCCA's application of the waiver rule as being contrary to clearly established federal law.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.*" Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Which state court avenue is designed to entertain constitutional claims in state court and which level of state court is designed to hear those claims are matters for the state court to decide and not for this federal habeas court. *See, e.g., Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (noting that, in one state court system, claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings, but only in an application to reopen the direct appeal).

Nor is the alleged ambiguity of a state court post-conviction statute of constitutional concern. *Nichols v. Heidle*, 725 F.3d 516, 557 (6th Cir. 2013) (petitioner's challenge to Tennessee discovery rules is not cognizable on federal habeas review because it is not a federal constitutional issue). Put simply, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citations omitted).

Having failed to show cause and prejudice, petitioner's above three claims are barred by his procedural default and cannot be reviewed by this habeas Court.

### D. Claims Based on Post-Conviction Proceedings

In his fourth due process claim, Troglin asserts the post-conviction court should have recused itself in response to his motion because the court was a material witness as to two claims offered in his petition—the admonishment issue and the instruction given to the jury regarding the Fourth of July holiday. The fifth claim involves the post-conviction court's denial of petitioner's motion for funds to hire a ballistics expert. These claims are also addressed together because the resolution of both is based on the same legal premise.

### 1. The Law

As discussed in the prior section, a federal habeas court does not sit "to reexamine state-court determinations on state-law questions*." Estelle*, 502 U.S. at 68. Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, alleged infirmities in state post-conviction proceedings is not cognizable on federal habeas review. *See Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1989); *see also Rhodes v. Cain*, 2014 WL 556734, at * 22 (E.D.La Feb. 11, 2014) ("To the extent [petitioner] argues that the state courts erred under state law standards of judicial recusal, this alleged violation of state law does not merit federal habeas corpus relief.").

### 2. Analysis

Therefore, Troglin's final due process claims are not cognizable in this instance either. *Cress*, 484 F.3d at 853 (noting "errors in post-conviction proceedings are outside the scope of federal habeas corpus review"); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) (alleged improper comments by post-conviction judge "cannot provide a basis for federal habeas relief" and are "not cognizable on habeas review").

## V.    CONCLUSION

Based on the above legal principles and reasoning, the Court finds none of petitioner's claims warrant issuance of the writ and, therefore, by separate order, will **DENY** this § 2254 application and will **DISMISS** this petition.

## VI. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on a procedural basis must demonstrate reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of certain claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings or its assessment of the claims. *Id.* Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**A separate judgment will enter**.

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**